ON EEHEAEING.
Per Curiam.
The property covered by the policy on which this suit is based was insured in other companies for *117 various sums. One of the policies was the subject-matter of another suit, which came to this court by appeal, and is reported in 2 Colo. App., p. 484. The apparent diversity in the opinion of the court in the two cases has been made the subject of much argument. Counsel also urged with apparent sincerity and unusual insistence two propositions which we regard as of vital consequence in the settlement of the issues. These things have moved the court to a practical reconsideration of the case, and have led us to supplement the principal opinion. To make the present discussion plain, a little fuller statement must be made of some of the elements of the case. The brewery property was bought on the 20th of December, 1888, from one James McCandless. The consideration was $12,150, of which $4,000 was paid in cash, and the balance by the notes of the purchasers. The abstract does not show how many notes were executed, nor the time for which they ran. They were made by John Wich, Herman Ell, Gottlieb Hess and Paul Voght. The cash was paid by Wich. There is evidence tending to show that the proportionate interests of the respective parties were to be two fifths to Wich, and one fifth to each of the others. Ho cash was paid save by Wich. What, if at all, the others were of necessity to contribute, otherwise than as to these proportionate interests, is not clear. Some of the parties testified the contributions were to be in these stated proportions, while Wich says each was to put up $3,000, and to advance it within two months. There must be some mistake about this, because a contribution of $9,000 by the other three would be a larger sum than they were bound to pay, according to the testimony of the copartners. However this may be, the testimony is not as definite as it ought to be concerning the terms of the agreement. If these parties went in together to buy the brewery and run. it on some antecedently settled plan, which is highly probable, they ought to be and probably are able to state the exact terms of the agreement, both in respect to the amount to be contributed by each, the time within which it was to be paid, and the conditions which *118 were annexed to the contract. Counsel .'complain that in the Equitable Company’s Case, in the 2 Colo. App., the court took a totally different view of the contract from the one now arrived at. The reason for this is very plain. The point on which that case turned respected the alleged equitable title of Wich. It was there insisted, as it is here, that, notwithstanding the apparent interest of Hess, Ell, and Yoght, in reality the title was in Wich, who was the equitable owner of all the property, and therefore had an insurable interest to the extent of its entire value, and consequently there had been no breach of one of the conditions, to wit, that respecting the sole and unconditional ownership. There was some .attempt to establish this on the former hearing, but the plaintiffs were nonsuited on the theory that there had been a breach of this condition. This court held this specific issue should, under the testimony, have been submitted to the juryi
The court did not go farther than to decide this narrow question. We have examined the abstract in that case, and it contains nothing to indicate the real facts concerning the title as they are stated in the present record.' It is manifest that on the 20th of December, 1888, whatever may have been the agreement between the copartners respecting the conditions :on; which the purchase was made, as they are at .present disclosed, they acquired an undivided interest in the property by the deed from McOandless. Wich’s contribution of the cash in no wise affected the legal rights of the other copartners. In legal effect, they paid a.part of the consideration money when they executed their notes for the unpaid portion of the purchase price and delivered them to the grantor. They became invested with both a legal and an equitable interest in the property. They proved no sort of an agreement inter se which would leave Wich the holder of the entire equitable interest and the other three with none. It was not established that the other three were to pay the totality of their part of the purchase price, regardless of the notes, before they should be invested with an interest in the property. As between themselves, the copartners could only *119 be called upon to advance their proportionate share of the-capital paid for the conveyance and of what might be put in to start the business. Wich alone testifies that this contribu-, tion was to be paid within two months, or the nonpaying members were to have no interest. His evidence on this subject is not satisfactory, and is not in harmony with that of his copartners. They all agree they went into the enterprise, and were to advance their proportionate part of the necessary money, or else were to forfeit their claim. It appears to us that the tenor and exact terms of this condition ought to be shown. Any failure in this particular would resolve the legal question on which the plaintiff predicates his right to maintain the action against him. We are not prepared to differ with counsel when he maintains that if the entire equitable interest was held by Wich, he might, if there were no other legal obstacles, recover on the poliuy, on the-hypothesis that it is unnecessary for him to hold the legal title in order to have an insurable interest to the extent of the value of the property. A very great difficulty arises from-the absence of evidence tending to show that the liability of the other three on the notes was contingent on the completion of the agreement and the payment by them of what was advanced by Wich when the property was bought. The notes are still held by MeCandless, and the parties can be made to pay. What their rights may be as between themselves and Wich, and whether, on the surrender, he made an agreement which would entitle them to protection by him against the paper, is not made clear by the testimony. In any event, there was no novation whereby these three parties would be released, and Wich alone holden on the notes. The absence of the legal title would be no obstacle to his recovery. If the other three persons could be adjudged the holders of what may be termed a “ dry trust,” this would not lessen his insurable interest. The difficulty springs from the circumstance that when these four parties entered into an agreer ment which virtually made them copartners, and bought the property, and executed- their -notes for the purchase price, *120 they became invested with both a legal and an equitable interest, which entirely destroys the claim that Wich’s title was an equitable one to the whole property. This statement is based on the theory that Wich failed to prove any such agreement between himself and his copartners as would leave him the holder of the entire equitable title. If he is able to satisfy the jury that the copartners made an agreement sufficiently specific, exact and certain in its tenns as to exclude the legal inferences which must be necessarily drawn from the facts of the purchase and the execution of the commercial paper which was subsequently carried out by the transfer in May by the three to Wich, he maj' possibly bring bis case within the doctrine concerning the insurability of equitable titles. The ease in this particular must be submitted to the jury with apt instructions on this subject, otherwise the general verdict cannot be accepted as conclusive on this question.
There are two other matter's which it may not be inexpedient to comment on somewhat more extensively than was deemed necessary by the court when the original opinion was prepared. The appellant places much reliance on the transfer in May by Yoght, Ell and Hess to Wich, as a breach of the condition in the policy against transfers. A good many states do not regal'd transfers between partners as a breach of this condition in a policy. Va. Fire & Marine Ins. Co. v. Vaughan, 88 Va. 832; Texas B. & I. Co. v. Cohen, 47 Tex. 406; N. O. Ins. A. v. Holberg ei al., 64 Miss. 51; West et al. v. Citizens’ Ins. Co., 27 Ohio St. 1; Pierce v. The Nashua Fire Ins. Co., 50 N. H. 297; Dermani v. Home Mutual Ins. Co., 26 La. Ann. 69; Burnett Martin v. Eufaula Home Ins. Co., 46 Ala. 11; Powers et al. v. Guardian Ins. Co., 136 Mass. 108; Hoffman & Place v. Ætna Fire Ins. Co., 32 N. Y. 405.
We' should therefore be inclined to hold the deed executed in May not a breach of that condition. The case would thus turn on proof respecting the original agreement. When this matter is thus brought into the forefront of the ease, and the jury are aptly instructed respecting it, the question may be definitely settled by their verdict.
*121 The other difficult}' respects the valuation of the property. In turn, this again hinges on another matter of fact, on which there is much conflict in the evidence. The company contends that the policy is void because of the overvaluation of the property. The witnesses were not in harmony on this matter of value. It is not of necessity true that the purchase price of real or personal property is of much weight in the settlement of such a dispute. The circumstances of the seller and the purchaser, and the wants or necessities of either, enter largely into the question of price. The purchasers who were called as experts and the witnesses produced by Wich were not agreed as to the value of either the buildings or the property. The special verdict of the jury does not enable us to decide between them, or to harmonize the differences in the evidence. Many special questions were submitted to the jury, and their answers would lead us to question the estimates of the owners. We do not care to express any pronounced opinion concerning it, since another jury will be called on to settle this fact. The importance of this may be wholly destroyed if the subsequent jury should decide one other matter in the plaintiff’s favor. Before the present policy was issued by the Sun Fire Office Company, the usual application for insurance was presented to Wich for his signature. The case discloses the fact of the preparation of two applications. On this, and the settlement of the facts respecting it, the whole matter of truthful or overvaluation hinges. The circumstances surrounding the preparation of the application are irreconcilable, and this matter must he determined by the jury. The instruction with reference to it should be direct and specific. Wich contends that the application which was pleaded by the Insurance Company, and offered in evidence, was not his. His testimony tends to show that he signed the first application, which was followed by the delivery of the present policy, with probably some others. Likewise, the presentation to him of another application thereafter, and his execution of it at the request of the agent, without any knowledge what *122 ever of its contents. The company’s testimony tends to show a refusal to issue a policy on the first application, and the preparation of the second in Wich’s presence, and on the basis of information furnished by him, followed by his subsequent signature. Of course, if the jury finds these facts with the company, it would end the controversy respecting the matter of the valuation, for this would demonstrate the untruthful and misleading character of Wich’s statements regarding it. A party must place a fair and reasonably, truthful valuation on the property which he seeks to insure when the statements made in his application are agreed to be warranties as between him and the company. A departure from this rule will make the contract of insurance void.
We make our statements very general in this regard, so-that they may not be unduly operative in the ensuing trial.
We think what has been said sufficiently responds to counsel’s contentions on the application for a rehearing, and will be sufficient to enable the trial court to dispose of the case without much trouble.
We still conclude the judgment must be reversed and the case remanded for a new trial. .